**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| KEVIN PORTER, | : | |
| | : | |
| | : | Civil Action No. 22-6199 (BRM) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

Before the Court is Petitioner Kevin Porter's ("Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1, "Motion".) Following an order to answer, the Government filed a response to the Motion. (ECF No. 3.) Following the Third Circuit Court of Appeals decision in *Range v. Attorney General of the United States*, 69 F.4th 96 (3d Cir. 2023), Petitioner filed a letter requesting (1) immediate release, (2) appointment of counsel, and (3) a board hearing (ECF No. 5) and a motion to dismiss his indictment (ECF No. 7). The Government submitted supplemental briefing regarding *Range*. (ECF No. 6.) For the reasons set forth below, Petitioner's § 2255 Motion and letter requests are **DENIED** and a certificate of appealability will not issue.

## I. BACKGROUND

On December 11, 2019, Petitioner was charged by complaint with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Crim. No. 21-154, ECF No. 1.) On February 18, 2021, Petitioner pled guilty to the one count charged pursuant to a plea agreement. (*Id.*, ECF Nos. 20, 24.) In accordance with the terms of the plea agreement, this Court

sentenced Petitioner to 60-months imprisonment, followed by a three-year term of supervised release. (*Id.*, ECF No. 31.)

On October 8, 2022, Petitioner filed his § 2255 Motion arguing (1) that he did not receive credit towards his federal sentence, and (2) his § 922(g)(1) conviction is unconstitutional under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). (*See* ECF No. 1.)

## II.  LEGAL STANDARD

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003). A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

## III. DECISION

### A. Sentencing Credit

Petitioner's first ground for relief argues that he should have received jail credit against his federal sentence, for the time he spent in state custody while serving a sentence for a parole violation. (ECF No. 1 at 5.)

This Court lacks jurisdiction to consider this claim because the claim is properly brought under 28 U.S.C. § 2241. Section 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the *execution* of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). A challenge to the Bureau of Prisons' ("BOP") calculation of jail credit is a challenge to the execution of a defendant's sentence, not a challenge to the validity of the sentence. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242 (3d Cir. 2005). As such, Petitioner's sentence credit claim must be brought in a petition under 28 U.S.C. § 2241.

However, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 must be bought in the district where the prisoner is confined. *United States v. Sheppard*, 742 F. App'x 599, 601 (3d Cir. 2018) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426 (2004)). Petitioner is currently incarcerated in Federal Correctional Institution Schuylkill which is situated in the Middle District of Pennsylvania. This Court does not, therefore, have jurisdiction to consider his claim that the BOP erred by not crediting his time spent on his state sentence against his federal sentence.

Accordingly, Petitioner is denied habeas relief as to this claim.

### B. Petitioner's § 922(g)(1) Conviction

Petitioner challenges his § 922(g)(1) conviction. (*See* ECF No. 1 at 6.) It is unclear based on Petitioner's Motion and his subsequent letter to the Court, whether Petitioner is arguing that § 922(g), which prohibits felons from possessing firearms and ammunition, is unconstitutional

facially or "as-applied" to him. (*See* ECF Nos. 1 and 5.) Considering Petitioner's *pro se* status, the Court will address both arguments.

### 1.  *The Current Status of Second Amendment Law*

The Second Amendment to the United States Constitution reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.

In *United States v. Heller*, the Supreme Court found that the District of Columbia's ban on handgun possession in the home violates the Second Amendment. The Supreme Court ruled "that the Second Amendment conferred an individual right to keep and bear arms" unconnected to militia service. 554 U.S. 570, 595 (2008).  But the Supreme Court emphasized "the right was not unlimited, just as the First Amendment's right of free speech was not" and, therefore, it did "not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose." *Id.* The *Heller* Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Id.* at 626. Additionally, the Supreme Court further qualified "that sorts of weapons protected were those in common use at the time . . . . We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627.

In *McDonald v. City of Chicago*, the Supreme Court reiterated the limitations to the Second Amendment, noting "[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons. . . .'" 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. 570 at 626–27).

On June 23, 2022, the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* considered and struck down the New York regulatory licensing program, whereby an applicant was required to prove that he or she had "proper cause" to carry a handgun in public. 142 S.Ct. 2111 (2022). The *Bruen* Court recognized that the Second Amendment protects the right of an "ordinary, law abiding citizen . . . to carry a handgun for self-defense outside the home." *Id.* at 2122. The Supreme Court found that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 2128 (quoting *Heller*, 554 U.S. at 626). The right protected by the Second Amendment allows for a variety of gun regulations. *Bruen*, 142 S.Ct. at 2133. ("[T]he Second Amendment is neither a regulatory straightjacket nor a regulatory blank check."). The Court laid out the proper legal test for courts to apply when determining whether a law violates the Second Amendment, noting courts must assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding. *Id.* at 2122, 2131. The *Bruen* Court explained:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126.

The government carries the burden to prove that there is a historical analogue for the modern regulation. *See id.* at 2127. The Government need not identify a "historical twin"; rather, a "well-established and representative historical analogue" suffices. *Id.* at 2133. Thus, when confronted with regulations "that were unimaginable at the founding," courts must reason "by

analogy," which "requires a determination of whether the two regulations are relevantly similar" using "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33 (citing *McDonald*, 561 U.S. at 767, and *Heller*, 554 U.S. at 599). "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* at 2133 (internal quotation marks and emphasis omitted).

Finally, the Third Circuit's recent *en banc* decision in *Range v. Attorney General of the United States* found in a "narrow" decision that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Bryan Range. 69 F.4th 96, 98 (3d Cir. 2023). In *Range*, Range pleaded guilty in 1995 to making a false statement to obtain food stamps. *Id.* at 98. At the time he pleaded guilty, his conviction was considered a misdemeanor punishable by up to five years' imprisonment. *Id.* The conviction precluded him from possessing a firearm under § 922(g)(1). *Id.* Range, however, desired to possess a hunting rifle and a shotgun for home defense, so he sought a declaration that § 922(g)(1) violates the Second Amendment as applied to him. *Id.* at 99. The Third Circuit Court of Appeals applied the *Bruen* analysis and found § 922(g)(1) unconstitutional as applied to Range.

First, the Third Circuit found Range was "one of 'the people' who have Second Amendment rights" because the term "the people" as used in the Constitution "'unambiguously refers to all members of the political community, not an unspecified subset.'" *Id.* (quoting *Heller*, 554 U.S. at 580). The Third Circuit next found that § 922(g)(1) regulated Second Amendment conduct, noting that "Range's request—to possess a rifle to hunt and a shotgun to defend himself at home—tracks the constitutional right as defined in *Heller*." *Id.*

The Third Circuit next asked whether the government had carried its burden to justify restriction Range's Second Amendment right. In order to justify the § 922(g)(1) restriction, as it applied to *Range*, the government needed to show that the statute was "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 142 S.Ct. at 2130). Ultimately, the Third Circuit determined that the government had not met its burden, because, in part, early law that prohibited convicted felons from possessing firearms applied only to violent criminals, and Range had not been convicted of a violent crime. *Id.* at 103–04. The Third Circuit emphasized that its ruling in *Range* "is a narrow one." *Id.* at 106.

### 2. Whether § 922(g) is Facially Unconstitutional

The regulation at issue here is 18 U.S.C. § 922(g)(1), which provides that it is a federal crime, for any person, who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition. Petitioner pled guilty to one count of being a convicted felon in possession of a firearm. The Supreme Court in *Bruen* did not call into question the constitutionality of § 992(g)(1).

The Supreme Court has repeatedly found that felon-in-possession prohibitions do not violate the Second Amendment. In *Heller*, the Supreme Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" and noted that such regulations are "presumptively lawful." *Id.* at 626. The Supreme Court reiterated this point in *McDonald*. 561 U.S. at 786 (reiterating that the Court's ruling "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons'"). Although the Supreme Court in *Bruen* did not reiterate this exact language, the Court did not explicitly disturb prohibitions on the possession of a firearm. Rather, three of the six Justices in the majority issued concurring opinions, noting that *Bruen* did not disturb the

7

language in *Heller* and *McDonald* that felon-possession prohibitions are presumptively lawful. *See* 142 S.Ct. at 2157, 2162 (Alito, J., concurring; Kavanaugh, J., concurring). Without explicit language in *Bruen*, this Court does not find that the *Bruen* Court intended to abrogate or overturn *Heller* and *McDonald*.

In *United States v. Barton*, the Third Circuit ruled that the list of "presumptively lawful" regulations on the possession of firearms, which includes regulations on the possession of a firearm by convicted felons, in *Heller* is not dicta. 633 F.3d 168, 171 (3d Cir. 2011). The Third Circuit therefore found that it was bound by "the Supreme Court's discussion in *Heller* of the categorical exceptions to the Second Amendment." *Id.* at 171–72. Therefore, the language in *Heller* and *McDonald* that the § 922(g)(1) restriction on possession of a firearm by a felon is presumptively lawful is not dicta and is binding on this Court.

The Third Circuit's decision in *Range* does not mandate a different result. The *Range* court made a "narrow" ruling, finding that § 922(g)(1) was unconstitutional only as applied to Range. 69 F.4th at 106. The Third Circuit did not find that § 922(g)(1) is facially unconstitutional. Rather, Judge Ambro joined Judges Greenaway, Jr. and Montgomery-Reeves in a concurring opinion, noting that § 922(g)(1) remains "presumptively lawful." *See Range*, 69 F.4th at 110 (citing *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626–27).

Therefore, § 922(g)(1) is facially constitutional. Petitioner's claim that § 922(g)(1) in its entirety is unconstitutional is denied.

### 3.   Whether § 922(g) is Unconstitutional as Applied to Petitioner

Petitioner argues that because his § 922(g)(1) conviction "mirrors" *Range*, it is unconstitutional. (*See* ECF No. 5.) The Court must consider whether § 922(g)(1) as it was applied to Petitioner, a defendant who has been previously convicted of multiple felony drug distribution

offenses, is unconstitutional. The Court finds that § 922(g)(1) as applied to Petitioner is not unconstitutional.

Applying the *Bruen* framework here, the threshold question is whether Petitioner is one of "the people" protected by the Second Amendment despite having prior felony convictions. *Range*, 69 F.4[th] at 101. In *Range*, the Third Circuit ruled that "the people" refers to all Americans and not only law-abiding persons. *Id.* Therefore, Petitioner is one of "the people" protected by the Second Amendment.

The next question presented by the Third Circuit in *Range*, is whether "'the Second Amendment's plain text covers [Petitioner's] conduct[]' [a]nd 'the Constitution presumptively protects that conduct." *Id.* at 103 (quoting *Bruen*, 142 S.Ct. at 2126). The Government argues that the Second Amendment plain text does not apply to Petitioner's conduct because Petitioner has not shown he possessed the firearm for a "lawful purpose." (*See* ECF No. 6 at 3.) The Court need not resolve this question, because even if Petitioner's conduct is covered by the plain text of the Second Amendment, the Government has affirmatively shown that § 922(g)(1) as applied to Petitioner was "consistent with the Nation's historical tradition of firearm regulation."

In *Bruen*, the Supreme Court found the Government may justify a restriction on firearm possession "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2130. "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical analogue, not a historical twin.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S.Ct. at 2133). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S.Ct. at 2133. The Supreme Court explained that the question is, "whether modern and historical regulations impose a comparable

burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133. Therefore, the Court must determine if the historical analogues identified by the Government establish a historical analogue for the prohibition of firearm possession by a felon who, like Petitioner, has been convicted of drug trafficking felonies.

The Supreme Court in *Heller* affirmed the right of "law-abiding, responsible citizens" to maintain firearms for self-defense, but clarified that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. The Supreme Court explained that "nothing in [its] opinion should be taken to case doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." *Id.* at 626–27 n.26. As explained at length above, the Supreme Court in *Bruen* did not explicitly to abrogate or overturn the finding in *Heller*.

The Government points to colonial and early state legislatures who disarmed individuals who "posed a potential danger" to others. (ECF No. 6 at 4 (citing *RA v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 200 (5th Cir. 2012)).) The Government notes "[s]ome early laws categorically disarmed entire groups deemed dangerous or untrustworthy, such as those who refused to swear allegiance." (*Id.* (citing *RA*, 700 F.3d at 200)); *see, e.g.*, Act of May 1, 1776, ch. 21, § 1, 1776 Mass. Acts 479; Act of June 13, 1777, ch. 21, § 4, 1777 Pa. Laws 63; Act of May 28, 1777, ch. 3 (Va.), reprinted in 9 WILLIAM WALLER HENING, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 281–83 (1821). The Government also supports their argument with the Supreme Court decision in *Bruen*, noting "[i]n the mid-19th century, many States enacted laws requiring 'those threatening to do harm' to 'post bond before carrying weapons in public.'" (*Id.* at 5 (quoting *Bruen*, 142 S.Ct. at 2148; *see, e.g.*, Mass. Rev.

Stat. ch. 134, § 16, 750 (1836); Me. Rev. Stat. ch. 169, § 16, 709 (1840); Mich. Rev. Stat. ch. 162, § 16, 162 (1846)).

Federal law first prohibited persons convicted of a felony from "receiving" firearms in 1938. Federal Firearms Act of 1938, Pub. L. No. 75-850 § 2(f), 52 Stat. 1250, 1251 (1938). This law only applied to persons "convicted of a crime of violence," which included "murder, manslaughter, rape, mayhem, kidnapping, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year." *Id.* §§ 1(6), 2(f). In 1961, Congress eliminated the "crime of violence" limitation. An Act to Strengthen the Federal Firearms Act, Pub. L. 87–342, 75 Stat. 757 (1961). In 1968, Congress changed the prohibited act to "possession," creating the law in its current form. Pub. L. No. 90-618 § 922(g)(1), 82 Stat. 1213, 1220 (1968).

The Eighth Circuit Court of Appeals, summarized Congress's intent in enacting § 922(g)(1) as follows:

> Congress enacted an analogous prohibition in § 922(g)(1) to address modern conditions. In the Omnibus Crime Control and Safe Streets Act of 1968, Congress found that there was "widespread traffic in firearms moving in or otherwise affecting interstate or foreign commerce," and that "the ease with which any person can acquire firearms other than a rifle or shotgun (including criminals . . . , narcotics addicts, mental defectives, . . . and others whose possession of such weapons is similarly contrary to the public interest) is a significant factor in the prevalence of lawlessness and violent crime in the United States." Pub. L. No. 90-351, § 901(a)(1), (2), 82 Stat. 225, 225. Congress found that "only through adequate Federal control over interstate and foreign commerce in these weapons" could "this grave problem be properly dealt with." *Id.* § 901(a)(3). By prohibiting possession of firearms by convicted felons and others, Congress intended to further this purpose without placing "any undue or unnecessary Federal restrictions or burdens on law-abiding citizens." *Id.* § 901(b). In the Safe Streets Act of 1968 and the Gun Control Act of 1968, Congress also tailored the prohibition on possession of firearms by exempting those convicted of felony offenses "pertaining to antitrust violations, unfair trade

practices, restraints of trade, or other similar offenses relating to the regulation of business practices as the Secretary may by regulation designate." *Id.* § 902 (codified at 18 U.S.C. § 921(b)(3)); Pub. L. No. 90-618, 82 Stat. 1213, 1216 (codified at 18 U.S.C. § 921(a)(20)).

The Supreme Court has observed that the purpose of the Safe Streets Act, as amended by the Gun Control Act, was to curb "lawlessness and violent crime." *Huddleston v. United States*, 415 U.S. 814, 824, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). The "very structure of the Gun Control Act demonstrates that Congress . . . sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). Congress prohibited "categories of presumptively dangerous persons from transporting or receiving firearms," *Lewis v. United States*, 445 U.S. 55, 64, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), because they "pose[d] an unacceptable risk of dangerousness." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 120, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). "Congress obviously determined that firearms must be kept away from persons, such as those convicted of serious crimes, who might be expected to misuse them." *Id.* at 119, 103 S.Ct. 986.

*United States v. Jackson*, 69 F.4th 495, 504–06 (8th Cir. 2023)

While there is no history of legislatures specifically prohibiting firearm-possession by felons prior to 1938, the *Bruen* Court explained that the Government must identify a "historical analogue, not a historical twin." 142 S. Ct. at 2133. The Government identifies regulations from colonial and early state legislatures who disarmed individuals who "posed a potential danger" to others, as well as pre and post ratification categorically banning certain groups of people from possessing firearms. (ECF No. 6 at 4–5.) For example, the Government notes that pre-ratification conventions suggest that legislatures may disarm certain categories of individuals, including those who are dangerous, explaining "a proposal presented at the Pennsylvania ratifying convention, for instance, stated that 'no law shall be passed for disarming the people or any of them unless for crimes committed, or real danger of public injury from individuals.'" (*Id.* (citing 2 BERNARD SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 665 (1971) (emphasis

added).) The Government argues that post-ratification "statutes show that individuals who were 'reasonably accused of intending to injure another or breach the peace' could properly be subject to firearm restrictions that did not apply to others." (*Id.* at 6 (citing *Bruen*, 142 S.Ct. at 2148–49).)

Historically, these laws have aimed at restricting the possession of firearms by those were considered potentially dangerous. The Supreme Court has noted that connection between drugs, firearms, and described them as a "dangerous combination." *Muscarello v. United States*, 524 U.S. 125, 132 (1998). In fact, Congress has criminalized the mere possession of a firearm while trafficking controlled substances, and has implemented a five-year minimum sentence, consecutive to any sentence imposed for drug trafficking. 18 U.S.C. § 924(c)(1)(A)

Considering the Supreme Court guidance and the historical analogues cited in the Government's opposition, the Court finds the § 922(g)(1) is constitutional as applied to Petitioner. The facts of this case do not "mirror" the defendant's situation in *Range*, as Petitioner argues. Instead, as the Government notes in their opposition, Petitioner's prior convictions for drug possession and distribution, including a felony drug conviction in which he was sentenced to three years imprisonment and had been release from custody shortly before his arrest for the instant conviction, show that he poses a danger to society. Accordingly, the Government has carried its burden of proving that § 922(g)(1) is constitutional as applied to Petitioner.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement

to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability shall issue.

## V. CONCLUSION

For the reasons stated above, Petitioner's motion to vacate sentence (ECF No. 1) is **DENIED** and Petitioner is **DENIED** a certificate of appealability. Petitioner's letter requests for 1) immediate release, 2) appointment of counsel, and 3) a board hearing (ECF No. 5) and his motion to dismiss his indictment (ECF No. 7) are **DENIED** as moot. An appropriate order follows.


Dated: September 28, 2023


       */s/Brian R. Martinotti*     
       **HON. BRIAN R. MARTINOTTI**
       **UNITED STATES DISTRICT JUDGE**